HOWARD C. NICHOLS V. STATE.

No. 24939. January 17, 1951.
State's Motion for Rehearing Denied March 14, 1951.

*George Red* and *Henry P. Giessel,* Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, *E. T. Branch,* Assistant Criminal District Attorney, Houston, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This prosecution arose under Art. 1149, P. C., which denounces the offense of assault with a motor vehicle. The trial was to the court, with punishment assessed at a fine of $50.

The charging part of the information reads as follows:

". . . . did then and there drive and operate a motor vehicle, to-wit, an automobile truck, and while so engaged did then and there commit an aggravated assault in and upon the person of Bertha Tyler by wilfully and with negligence colliding with an automobile, which said automobile was then and there occupied by the said Bertha Tyler, then and there and thereby causing injury less than death to the said Bertha Tyler."

In Merryman v. State, 153 Texas Crim. Rep. 593, 223 S. W. 2d, 630, we held such a pleading sufficient, as against the contention that the negligence relied upon should be alleged as under negligent homicide. In reaching that conclusion, however, we made it clear that where negligence is relied upon to constitute a violation of the assault-with-a-motor-vehicle statute (Art. 1149, P. C.) it must be such negligence as comes within the meaning of negligent homicide (Arts. 1231 and 1238, P. C.)

So, in the instant case where the state relies for a conviction upon the negligent rather than wilful act of the appellant, the facts, to be sufficient to support a conviction, must show such negligence. Appellant earnestly insists that the facts do not so show.

Negligence, to constitute negligent homicide, is of two kinds, viz., that which happens in the performance of a lawful act and

that which occurs in the performance of an unlawful act (Art. 1230, P. C.), known, respectively, as negligent homicide of the first degree and negligent homicide of the second degree.

There being no allegation in the information as to appellant's negligent acts upon which the state relies for a conviction, or whether of the first or second degree, it follows that this conviction should be sustained if the facts show any negligent act on the part of the appellant which would constitute negligence under the law of negligent homicide.

In this connection, it must be remembered that, whatever the character of negligence relied upon to constitute negligent homicide, there must be an apparent danger of causing the death of the person killed or of some other (Art. 1232, P. C.), and no apparent intention to kill (Art. 1235, P. C.).

Obviously, these elements of negligent homicide enter into the instant prosecution, where death did not result, only in determining whether negligence such as would authorize the instant conviction has been shown.

The injured party, Bertha Tyler, was riding in an automobile driven by her son along a public highway. She testified:

"I do not know of my own knowledge what struck us. I did not see an automobile before the accident. I was taken to a hospital where I remained for three months."

The son testified as follows:

"I have no knowledge of what vehicle was involved in the accident with me. The front and side of my car were struck, and some on the other side. I was driving on the right side of the road. I don't know how wide that road is. It is wide enough for more than two cars. It has no esplanade, and I do not recall a painted center stripe. I was on my proper side of the road, and was going about 25 miles an hour. I did not hear any horn or other warning signal before the accident. I don't exactly know if it happened at an intersection, or where. Winkler Drive is a public street in Harris County, Texas."

The state offered in evidence the voluntary statement of the appellant, in which he said:

"My name is Howard C. Nichols. I am 24 years of age. I reside at 115 Aurora. I have been driving a Taystee Bread

Truck for the Taystee Bread Co. for about 1 1/2 years. My *rout* at this time is in Galveston Texas. I drive from Houston to Galveston every day on my route. Today about 3:50 P.M. as I was coming through Park Place. I was going west on Winkler about 20 to 25 MPH. It had been raining some and the street was slick. Traffic was medium I guess I had met about 6 cars in the last block. I had just met a car when the right rear wheel of the truck slipped off the pavement and this threw the front of the truck into the path of another car the left of my truck struck the left front of the other car which was going east on Winkler there was a boy about my own age driving the other car and there was a woman in the car with him. The impact knocked my truck around headed in the opposite direction of travel. I got out of my truck and saw that the occupants of the car were injured and told a man to call the police and an ambulance."

Whether the facts do or do not warrant the conclusion that the collision was the result of an unavoidable accident is not necessary to be here determined, for the trial court, by the judgment entered, has found that the collision resulted from the negligence of the appellant. The conviction must stand or fall upon that finding.

There appears to be no issue between the state and the appellant as to the immediate cause of the collision—that is, that the right rear wheel of the truck appellant was driving slipped off the pavement, throwing the front of the truck into the path of the oncoming car. The state, in offering the voluntary statement of the appellant to that effect, made that its testimony. No one testified to the contrary. The appellant testified to the same fact.

If appellant was negligent, then it was by reason of the fact that the truck "slipped" off the highway after he "had just met" another car.

What act, if any, on the part of the appellant caused his truck to slip from the highway the record does not reflect.

While it is true that the negligence contemplated in negligent homicide may arise out of the failure to exercise ordinary care (Art. 1233, P. C.; Guajardo v. State, 139 Tex. Cr. R. 201, 139 S. W. 2d 85), such failure must, of necessity, be established by the proof and cannot be the subject of supposition or conjecture.

The state having by its evidence shown that the immediate cause of the collision was by reason of the fact that the truck appellant was driving "slipped" from the highway and there being no proof that such slipping from the highway was caused by or resulted from an act of negligence on the part of the appellant, we are constrained to hold the facts insufficient to sustain the conviction.

The judgment is reversed and the cause remanded.

Opinion approved by the court.

GRAVES, Presiding Judge (Dissenting).

I think this cause should be affirmed and here give my reasons therefor.

It is undisputed that appellant, while driving his truck in an opposite direction to the injured parties on a highway and while appellant's left-hand road was obstructed by another, drove over onto his left-hand side of the road and struck the car of the complaining witness, such truck being over on the one-half of the road belonging to the injured party and not on appellant's one-half thereof. This was admitted by appellant, who often traveled this road and was familiar with its hazards. He testified as follows:

"When my right rear wheel got off of the road on the shoulder, I hit the car; I couldn't say just how far I went, but I hit it immediately after it slipped sideways. I did not apply my brakes, and didn't have time to use my horn. The automobile in which the parties were injured was on its proper side of the road. When my wheel slipped off of the road, it threw the front of my truck on my wrong side of the road. My front never went off of the pavement. If I had remained on my side of the road, I wouldn't have hit the car. I struck the car at more or less a sideways angle; not completely sideways. I angled across when my wheel slipped off. There appeared to be no damage to the right side of my truck."

Unquestionably the appellant was on the wrong side of the road in close proximity to the party injured and was violating Article 801, Vernon's P.C. The question of negligence is pretermitted.

The next question then arises from his defense. He testified that it had been raining and that the road was wet; that

his rear wheels slipped off the pavement and that threw his front wheels over the median line of the road and into the car of Mr. Tyler. In other words, it was an unavoidable accident. In his statement introduced by the state, he stated that it had been raining some and the street was slick. Relative to the rain and the wet condition of the road, the lady who was in the car in which she was injured testified:

"The sun was shining and the weather was clear. * * * It was a clear day at the time of the accident -- I don't have a good memory. From my recollection, it was a clear day."

This lady's son, who was driving her car, testified:

"It was light, and the weather was dry. Winkler Drive is a paved highway, and I think it was dry."

Appellant then offered his testimony above quoted, which amounted to a defense of an unavoidable accident, which the trial court heard and evidently discarded.

Unquestionably appellant was guilty of a violation of the law of the road (Article 801, P.C.) and could only defend on his plea of unavoidable accident. The trial court heard the appellant's version and seemed not to have given it credit but believed to the contrary under the evidence. This he had a right to do. The negligence was a question for the court. See Huff v. State, 123 Tex. Cr. R. 238, 58 S.W. (2d) 113; Pehl v. State, 153 Tex. Cr. R. 553, 223 S.W. (2d) 238; Merryman v. State, 153 Tex. Crim. Rep. 593, 223 S.W. (2d) 630; Dunham v. State, 148 Tex. Cr. R. 329, 186 S.W. (2d) 820.

It is suggested that because the state introduced appellant's statement wherein he stated that the street was wet and that his rear wheels slipped off the pavement that such facts show that the state proved that the cause of the collision was an unavoidable accident. Again, we quote from the testimony of the police officer who investigated the accident as follows:

"The accident happened about 3:50 P.M. I got a radio call on a major accident, and went there in answer to the call. I don't know where I was when I got the call; we were cruising in that part of town. When I got there, I saw Mr. and Mrs. Tyler who have just testified; they were putting them in the ambulance. I saw the motor vehicle that had been involved. One was a truck, '47 Ford truck, and the other a Chevrolet, I believe a '38 or '39. The road was dry when I made my investi-

gation; the pavement was dry. I took some measurements. Winkler, at that location, is 21 feet wide. The slab is concrete; there is no curb there. This was near the intersection of Joplin Street. The accident happened in the intersection of Winkler and Joplin. I determined the point of impact by the debris I found in the road. I determined that it occurred 12 feet from the north side of Winkler Drive which is 21 feet wide, and goes northwest and southeast. Joplin doesn't have a slab like Winkler does, and it is about 32 feet wide. The truck had traveled 12 feet. Joplin intersects Winkler at an angle at that location; it comes in at an angle on one side, and at another angle on the other side. The accident happened on the north side of the street even with the curb line of Joplin Street, on the south of the street. It was past the curb line about 15 feet. The street runs at an angle across Winkler Drive. The passenger vehicle was damaged on the left front, and the truck also was damaged on the left front. Winkler is 21 feet wide, and the debris and skidmarks were 12 feet from the north side of the street, which would make the No. 1 vehicle, the truck, on the wrong side of the street. There were no skidmarks leading up to either vehicle from where they stood when I viewed them. There were no skidmarks at the point of impact where the cars hit and skidded on the pavement at the point of impact. I don't know the defendant other than seeing him at that time I took a written statement from him after giving him the warning that appears at the top of the sheet you show me. The statement was signed by the defendant. The pavement, according to my investigation report here, was wet."

These matters were issues of fact for the court, and the court looks to all the testimony. See Fowler v. State, 116 Tex. Cr. 645, 31 S.W. (2d( 450.

In the case of Cross v. State, 100 Tex. Cr. R. 88, 271 S.W. 621, it is said:

"A case is tried on all the testimony produced, and if all the testimony, no matter from what source, is sufficient to justify the conclusion of guilt reached, this court would not confine itself to an examination solely of the testimony given by state witnesses."

All the facts show that appellant was on the wrong side of the road. The issue of an unavoidable accident was for the trial court, whose verdict evidences the fact that he found against such.

The judgment should be affirmed, and I enter my respectful dissent herein.

## ON MOTION FOR REHEARING.

WOODLEY, Judge.

A majority of the members of this court remain convinced that the evidence as a whole is insufficient to show beyond a reasonable doubt that appellant was guilty of a negligent act or omission such as would authorize his conviction for the offense charged against him. Such holding, it is believed, finds support in Boyd v. State, 129 Tex. Cr. R. 538, 90 S.W. 2d 253.

A quite different rule exists in civil cases, and we need not express our view as to the sufficiency of the evidence to support a claim for damages.

The state's motion for rehearing is overruled.

Opinion approved by the court.