**Joe POPE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 47198.

Court of Criminal Appeals of Texas.

Feb. 20, 1974.

Cox & Hurt, Plainview, for appellant.

Tom Hamilton, Dist Atty., Plainview, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of murder without malice. The jury assessed punishment at five years.

Appellant's sole ground of error alleges that the evidence is insufficient. He contends that an exculpatory statement which was contained in a written confession introduced by the State was not disproved. We overrule this contention and affirm.

During the evening of August 21, 1971, Robert Kernell, Ernest Ortegon (the deceased), Carl Coleman and the appellant had been drinking at Holey's Grill in Plainview and then sometime after 11:00 p.m. went to Kernell's house to drink some more and to shoot dice. An argument developed between Ortegon and the appellant following a discussion in regard to races. The men then left, went by appellant's house to pick up a fifth of whiskey and returned to the cafe.

Ozelle Craft, who was also at the cafe when the four men returned, testified that he had had a discussion with the appellant about a pistol and had seen the appellant put it under his shirt under his belt. He also stated that there had not been an argument between the deceased and the appellant at the cafe. Craft stated that when the four men left Kernell was driving and the deceased was in the right front seat.

Texas Ranger Troy Porterfield, who was sheriff of Hale County on the date of the offense, testified that at approximately 6:00 a.m. on August 22, 1971, a man advised him that a shooting had occurred on Date Street in Plainview. Porterfield arrived at the scene some three minutes later. Upon his arrival, he noticed Robert Kernell and the appellant standing beside a car and Ernest Ortegon lying by the curb. He testified that he immediately picked up Ortegon's right arm and felt for a pulse

beat, but there was none. While waiting for other officers to arrive, Porterfield talked to Kernell and the appellant. The appellant told him that Ortegon had pulled a gun on him, they scuffled over it and it went off. Kernell related the same story. After hearing their story that Ortegon had had the gun, he examined the body of the deceased again. This time there was a gun in Ortegon's right hand, a gun which was not there when he had checked Ortegon's pulse.

Jerry Huddleston, a news director, testified that when he arrived at the scene there was no gun in the hand of the deceased. A short time later when Huddleston took a picture, there was a gun in the hand of the deceased.

Detective Jerry Austin of the Plainview police department testified that he had been summoned to the scene by his office and that a short time afterwards he talked to Kernell and the appellant at the sheriff's office. Because of inconsistencies in the stories of Kernell, the appellant and other witnesses in the case, Detective Austin again interviewed the appellant. Still no charges had been filed against the appellant. After the appellant had been warned of his rights, he gave a written statement to officers wherein he stated:

"I pulled the gun out and asked him not to be slapping me. I was going to hit him on the head with the gun. We started scuffling with the gun. The gun went off and he slumped in the seat. Robert [Kernell] pulled over to the curb and stopped. I opened the door on the right side and Ernest fell out. I thought he was dead and I got scared. I put the gun in Ernest___ hand. Robert notified the officers."

On cross-examination, appellant's counsel questioned Detective Austin about the voluntariness of the statement and then, himself, introduced into evidence and read to the jury the officer's offense report. The report referred to the several discrepancies Detective Austin had noted in the original story given to him by the appellant and also mentioned a polygraph test given appellant in Amarillo in regard to the shooting.

Appellant's counsel then asked Austin if the appellant had given a confession that the shooting was an accident and if he had passed a polygraph examination relative to the confession. Detective Austin then testified that the appellant had given an oral confession but that he did not say anything about it being an accident and it was after their return from Amarillo that the appellant gave the voluntary written statement wherein he said that the shooting was an accident.

On re-direct, Detective Austin testified that the appellant was given a polygraph test after he made the following oral statement to the officer:

"... an argument had developed there at 6th and Date and that Ernest Ortegon had reached over the back seat and slapped him ... Joe (the appellant) said he had got the gun out at that time .... That they went down the road a little bit further from 6th and Date and that ... Joe said he had the gun out in his hand at that time and that Ernest had turned around again. He thought he (Ortegon) was going to hit him and he told him not to hit him, or not to do anything. And he turned around and acted like he was going to, and Joe shot him."

Upon their return to Plainview, the appellant changed his story and made the written statement or confession.

■ When the State introduces an exculpatory statement in a confession of a defendant, it is then bound to disprove it. Grady v. State, Tex.Cr.App., 466 S.W.2d 770. Appellant's oral statement indicated that defense, if any, would be self-defense rather than accident. The conflicts in appellant's versions of the shootings are circumstances tending to show guilt. These, connected with the other circumstances,

are sufficient to disprove the exculpatory statement contained in his written statement. The jury trying a case is authorized to accept or reject any or all the testimony of any witness. A jury may look to all the evidence in the case, that offered by the State as well as that offered by the appellant, in determining the facts and issues in the case. Angle v. State, Tex.Cr.App., 486 S.W.2d 308. The jury had sufficient evidence to conclude that the shooting was not an accident.

No error being shown, the judgment is affirmed.