RODERICK J. FRASER V. THE STATE.

No. 21299.   Delivered January 15, 1941.

Rehearing Denied February 19, 1941.

The opinion states the case.

*Fryer & Milstead,* of El Paso, for appellant.

*Roy Jackson,* District Attorney, and *William E. Clayton* and *Harold S. Long,* Assistant District Attorneys, all of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is embezzlement of property over the value of $50.00. The punishment assessed is confinement in the State penitentiary for a term of two years.

Appellant's main contention is that the evidence is insufficient to justify and sustain his conviction. It appears from the State's evidence that appellant was employed by the Peterson Lumber & Paint Company, a corporation duly incorporated under and by virtue of the laws of this State; that it was located and doing business at El Paso in El Paso County, Texas, at the time of the commission of the alleged offense; that in March, 1937, appellant was placed in charge of the petty cash box or drawer with instructions to pay all small bills out of the same, including a part of the pay-roll. It was appellant's duty to keep all bills on file and at the end of each week to make up an itemized statement showing the amounts paid out with the bills attached for verification. A check was then drawn in said sum on the bank and the amount of money was placed in the petty cash drawer to replenish the withdrawals.

The record further shows that there were from three to four other employees of the corporation who had access to the

petty cash drawer and who at times would pay freight bills out of the same and place the freight bills therein as evidence thereof. Some of the employees would take money from said drawer and place a slip of paper therein showing the amount withdrawn by them as part of advance payment of their monthly salary which would subsequently be deducted from their monthly salary checks. This practice was continued up to September, 1939, at which time Mr. Wells, one of the officers of the corporation, discovered that a freight bill bearing date June, 1938, had apparently been changed by writing the figure "9" over the figure "8" and attached to the itemized statement made by appellant on June 14, 1939.

An audit was then made of all the transactions affecting the petty cash drawer and it revealed a shortage of $1288.91. However, in the indictment appellant was charged with embezzlement of only $68.09 on or about the 13th day of June, 1938. No direct evidence was introduced showing that appellant and no other person embezzled the money in question.

To establish the charge against appellant the State relied entirely upon the following facts: First, that it was appellant's duty to handle the cash in the petty cash drawer and pay freight bills out of the same; second, that it was his duty at the end of each week to make up an itemized statement showing the amount paid and attach the various bills which were paid in verification of the statement; and third, to draw a check in the total sum paid during the week and take the same, together with the itemized statement, to Mr. Peterson, the president, or Mr. Wells, the secretary and manager of the company, for his inspection and having him sign the check, which was then taken to the bank by some employee, cashed and the money brought to appellant, who counted the same and, if correct, placed it in the petty cash box or drawer. It was shown that on the 13th day of June, 1939, appellant drew a check payable to the Southern Arizona Freight Lines in payment of a bill in the sum of $68.09, which he took to the president of the company to be signed and which was signed; that on the following day he made an itemized list of all bills paid out of the petty cash drawer, including a bill in the sum of $68.09, due to the Southern Arizona Freight Lines for freight charges. The date of this bill appeared to have been changed from 1938 to 1939 by writing the figure "9" over the figure "8" and which apparently was placed in the petty cash drawer and at the end of the week this bill was included by appellant in his itemized statement. This bill, with other freight bills, was attached thereto for verification. The

itemized statement showed the total amount of money that had been withdrawn from the petty cash box or drawer during the week. The itemized statement, together with a check drawn in said amount, was taken to Mr. Peterson, who examined it, found it correct and then signed the check. Consequently, the question is, who changed the figure on the freight bill? Who placed it in the petty cash drawer? Who withdrew the sum of $68.09 therefrom? According to the testimony, there were four or five employees who had access to the petty cash drawer and paid freight bills out of it and also withdrew money from the same and placed I. O. U.'s therein which showed the amount withdrawn. The testimony further shows that when appellant found these items in the cash drawer they were presumed to be correct. The other employees were not called upon to testify that they, nor either of them, changed the figure on the freight bill in question, placed it in the cash drawer, and took $68.09 therefrom. The State takes the position that if appellant did not do it, he should have discovered it when he made up the itemized statement, but neither the president nor Mr. Wells, or whoever examined it, discovered it until several months later. Just why these other parties were not called to testify is not disclosed by the record.

Appellant here, as in the trial court, asserts that the evidence, being entirely circumstantial and failing to exclude every other reasonable hypothesis except his guilt, that the State failed to meet the requirements of the law. Therefore, the court erred in declining to give his (appellant's) requested instruction to the jury to return a verdict of not guilty. We are of the opinion that his contention is well founded.

In the case of Porter v. State, 1 Texas Cr. App. 394, (399) this court said:

" 'In criminal cases the mere union of a limited number of independent circumstances, each of which is of an imperfect and inconclusive nature, cannot afford a just ground for conviction.' 1 Starkie on Ev. 570; 1 Greenl. on Ev., sec. 13,a; Roseborough v. State, 43 Texas, 575.

" 'There must be legal, competent evidence, pertinently identifying the defendant with the transaction constituting the offense charged against him. It is the duty of the court to require that such legal, competent evidence shall be adduced on the trial in order to sustain a verdict of guilty.' Tollett v. The State, 44 Texas, 95."

From Tex. Jur., Vol. 18, p. 443, sec. 320, we take the fol-

lowing quotation:

"The first and essential step in an inquiry into the sufficiency of circumstantial evidence is to ascertain whether the material facts have been definitely established, the general rule being that each fact must be proved by competent evidence beyond a reasonable doubt equally as if it were the main fact in issue. Since it is clear that the existence of the *factum probandum* must be doubtful where it rests upon inferences from incertitudes, a conviction is not supported when the evidence is in this condition. There must be direct evidence which establishes the basic facts beyond all reasonable doubt. It is not permissible procedure to base one inference upon another. Thus where the conviction depended upon the defendant's knowledge of what was contained in certain packages was relied on as proof of this knowledge, the court held that it was requisite that the basic fact of possession should be proved by direct evidence."

In Branch's Ann. Tex. P. C., p. 1042, sec. 1877, it is said:

"In order to sustain a conviction on circumstantial evidence it should appear not only that an offense as charged was committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant therein. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him."

In the present case, it appears that some one took money from the corporation which did not belong to him but the evidence does not unerringly point to the appellant alone. The circumstances proved in an effort to connect appellant with the offense are rather suspicious but in our opinion do not exclude every other reasonable hypothesis except the guilt of the appellant which is necessary to sustain the conviction. See Graves v. State, 43 S. W. (2d) 953, which we believe sustains appellant's contention.

Having reached the conclusion that the evidence does not exclude every other reasonable hypothesis except the guilt of the appellant, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

Counsel for the State calls our attention in the motion for rehearing to the following statement made in paragraph two of the original opinion: 'This practice was continued up to September, 1939, at which time Mr. Wells, one of the officers of the corporation, discovered that a freight bill bearing date June, 1938, had apparently been changed by writing the figure '9' over the figure '8' and attached to the itemized statement made by appellant on June 14, 1939." Counsel for the State is correct in suggesting that the freight bill mentioned in the quoted statement taken from the original opinion was not the freight bill involved in the prosecution but was another freight bill which was submitted by the appellant to his superiors with an itemized statement prepared in August shortly before the appellant left on his vacation in September, and had no connection with the sum of $68.09 which it was alleged appellant had embezzled.

It is also insisted by counsel for the State that we made an erroneous statement in paragraph 3 of the original opinion when we mentioned the date of the commission of the offense as charged in the indictment. Our examination of the copy of the indictment embraced in the transcript discloses that it was alleged that the offense occurred on the 13th day of June, 1938, which was the date stated in our original opinion. Counsel for the State is in error in stating that the offense was charged to have occurred on the 13th day of June, 1939.

It is pointed out by counsel that we were in error in our statement in the fourth paragraph of our opinion which is as follows: "The date of this bill appeared to have been changed from 1938 to 1939 by writing the figure '9' over the figure '8' and which apparently was placed in the petty cash drawer and at the end of the week this bill was included by appellant in his itemized statement." We fail to find in the record any testimony showing that the bill referred to in the quoted statement had been altered in any way.

It also appears that in paragraph four of the original opinion we referred to the offense as having been committed on the 13th of June, 1939. The date of the commission of the offense, as heretofore stated, was the 13th of June, 1938.

Counsel for the State makes no contention that the in-

158

accuracies to which we have referred could have led to an erroneous conclusion in the original disposition of the appeal. However, he insists that we were in error in holding that the circumstances reflected by the record fail to exclude every other reasonable hypothesis save the guilt of the appellant. As pointed out in the original opinion, there were some three or four other employees of the corporation who had access to the petty cash drawer and who at times would pay freight bills out of such drawer and place said freight bills in the drawer as evidence of the payment. These employees were not called by the State to testify. Hence there is in the record no denial by them that they were guilty of the embezzlement of the corporation's money. Under the circumstances, we are unable to reach the conclusion that the evidence is sufficient.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.